No. 24-1649

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

BECKY'S BRONCOS, LLC; JAMES BROAD; REBECCA MCCRENSKY,
*Plaintiffs-Appellants*,

v.

TOWN OF NANTUCKET; NANTUCKET TOWN SELECT BOARD,
*Defendants-Appellees*

On Appeal from the United States District Court
for the District of Massachusetts

Case No. 1:24-cv-11308-AK
The Honorable Angel Kelley

# REPLY BRIEF OF PLAINTIFFS-APPELLANTS

Lucas Newbill
1st Cir. Bar # 1192218
Law Offices of Lucas Newbill
P.O. Box 1741
Brookline, Massachusetts 02446
Tel. 617-918-7567
lucas@lucasnewbill.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                         3

ARGUMENT                                                                     5

    1. It was the Town's burden to prove state action immunity at the preliminary injunction stage and the District Court failed to hold them to it.        5

    2. Not a single case cited by the Town supports finding state action immunity here. To decide otherwise would – as the Fifth Circuit has aptly put it – "stand federalism on its head."        6

    3. Insulating five local companies from competition harms Plaintiffs and out-of-state businesses alike. Thus, Plaintiffs have standing to pursue their claim under the Dormant Commerce Clause Doctrine.        11

    4. The Town has no process for a new applicant to obtain a license or medallion, purposefully and effectively insulates five locals from competition, and massages evidence in its brief to contend otherwise.        13

    5. The bylaw prescribes an application process, but the Town provides *none*, epitomizing denial of due process.        15

    6. Plaintiffs-Appellants' irreparable harm is caused by the Town's illegal bylaw.        16

    7. The government's closure of this family's business interferes with the most sacred of associations protected by the Due Process Clause and the First Amendment – that of the family – such that irreparable harm is presumed.        17

CERTIFICATE OF COMPLIANCE                                                   20

CERTIFICATE OF SERVICE                                                      20

# TABLE OF AUTHORITIES

**Cases**

Beitzell v. Jeffrey,
    643 F.2d 870 (1st Cir.1981)                                     16

Board of Directors of Rotary Int'l v.
    Rotary Club of Duarte,
    481 U.S. 537 (1987)                                             18

Columbia v. Omni Outdoor Advertising, Inc.,
    499 U.S. 365 (1991)                                             7,8

Corey v. Look,
    641 F.2d 32 (1981)                                              9

F.T.C. v. Phoebe Putney Health Sys. Inc.,
    568 U.S. 216 (2013)                                             8,9

Gonzales v. O Centro Espírita Beneficente
    União do Vegetal, 546 U.S. 418 (2006)                           6

Houlton Citizens' Coal. v. Town of Houlton,
    175 F.3d 178 (1st Cir. 1999)                                    11,12

Interface Group, Inc. v. Massachusetts Port Auth.,
    816 F.2d 9 (1st Cir. 1987)                                      9

Moore v. East Cleveland,
    431 U.S. 494 (1977)                                             18

Puerto Rico Tel. Co., Inc. v. San Juan Cable Co. LLC,
    196 F. Supp. 3d 207 (D.P.R. 2016)                               5

Puerto Rico Tel. Co., Inc. v. San Juan Cable LLC,
    874 F.3d 767 (1st Cir. 2017)                                    5

Rectrix Aerodrome Centers, Inc. v. Barnstable Mun.
    Airport Comm'n, 610 F.3d 8 (1st Cir. 2010)                      9

Ruiz v. Bally Total Fitness Holding Corp.,
	496 F.3d 1 (1st Cir. 2007)	7

Second City Music, Inc. v. City of Chicago,
	333 F.3d 846 (7th Cir. 2003)	16

Semmes Motors, Inc. v. Ford Motor Company,
	429 F. 2d 1197 (2nd Cir. 1970)	18

Sindicato Puertorriqueño v. Fortuño,
	699 F. 3d 1 (1st Cir. 2012)	18

SmileDirectClub, LLC v. Battle,
	4 F.4th 1274 (11th Cir. 2021)	5

State Bd. of Dental Examiners v. FTC,
	574 U.S. 494 (2015)	6,8,9

Surgical Care Ctr. of Hammond, L.C. v.
	Hosp. Serv. Dist. No. 1 of Tangipahoa Par.,
	171 F.3d 231 (5th Cir. 1999)	10

Town of Hallie v. City of Eau Claire,
	471 U.S. 34 (1985)	5,9

U.S. v. Rahimi,
	No. 21-11001 (5th Cir. Sept. 12, 2024)	7

Wine & Spirits Retailers, Inc. v. Rhode Island,
	481 F.3d 1 (1st Cir. 2007)	12

# ARGUMENT

1. **It was the Town's burden to prove state action immunity at the preliminary injunction stage and the District Court failed to hold them to it.**

Through misdirection, the Town[1] claims that proving state action immunity was not their burden. Appellees' Br. pp. 15-16. The Town confounds whether the defense is waivable with whether it was their burden to prove. The actual case law cited by the Town makes clear it was the Town's burden. See Puerto Rico Tel. Co., Inc. v. San Juan Cable Co. LLC, 196 F. Supp. 3d 207, 235 (D.P.R. 2016) (emphasis added), aff'd sub nom., Puerto Rico Tel. Co., Inc. v. San Juan Cable LLC, 874 F.3d 767 (1st Cir. 2017) ("The context of the earlier caselaw is that state action immunity is in the 'nature of an affirmative defense' in which the burden of proof is on the party claiming the immunity.") Although perhaps not an "immunity" for the purposes of the collateral order doctrine, it is a defense nonetheless; see SmileDirectClub, LLC v. Battle, 4 F.4th 1274, 1280 (11th Cir. 2021); upon which it is the burden of the Town to prove; cf. Town of Hallie v. City of Eau Claire, 471 U.S. 34, 39 (1985). The Town utterly failed to meet this burden below by failing to submit a single piece of admissible evidence that the bylaw was intended to or actually does curb traffic. Appellants' Br., pp. 13-14. The District

---

[1] For ease of discussion, "Town" herein refers to all defendants, both the Town of Nantucket and its Select Board.

Court judge picked up the Town's slack by relying on attorney argument. Appellants' Br., p. 13. This was clear error. Thus, the Town failed to meet *their* burden of proof at the preliminary injunction stage; see Gonzales v. O Centro Espírita Beneficente União do Vegetal, 546 U.S. 418, 429 (2006).

**2.      Not a single case cited by the Town supports finding state action immunity here. To decide otherwise would – as the Fifth Circuit has aptly put it – "stand federalism on its head."**

The rationale of state action immunity is "to ensure the States accept political accountability for anticompetitive conduct they permit and control." State Bd. of Dental Examiners v. FTC, 574 U.S. 494, 505 (2015). The Town argues that a 1989 special act of the legislature; Appx 154-155; which approved the Town's recently-enacted-bylaw requiring car rental agencies to be licensed by the Town and pay a nominal fee; Appx 152-153; impliedly authorized the Town to amend their bylaw ten years later to limit supply and prevent new businesses from entering the market and enforce that amended bylaw in a manner that completely forecloses new entrants from the market. Appellees' Br., pp. 16-22. The Town posits that its cap on the number of cars on island, restriction on issuance of medallions to those operating in 1996, Town-sanctioned medallion hoarding, complete denial of process for new applicants for at least the last nine years (how long the current licensing administrator has been working and testified to in open court), the Town's own withholding of 8 unused medallions from the market and

6

Plaintiffs-Appellants in particular, and exempting from prosecution those renting through a specific digital platform called Turo, including Town employees; Appellants Br., pp. 11-16; – *all of this* – was impliedly authorized by the legislature because the special law carved out from the fee provision those who had already paid an excise tax under G.L. c. 60A.² Appellees' Br., p. 17. The Town's argument is baffling, *at best*.³

The Town relies on Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365 (1991). ⁴ Appellees' Br., pp. 17-18. Unfortunately for the Town, there is not a

---

²     The prohibition of charging a fee upon those who had already paid an excise tax under G.L. c. 60A was a creation of the special law, and *not* part of the Town bylaw before the legislature for approval. Compare Appx 152-153 (bylaw) with Appx 154-155 (special law). A town cannot constitutionally "levy, assess [or] collect taxes" without allowance from the general court. Section 7 of art. 89 of the Amendments to the Massachusetts Constitution. It may be presumed that the legislature knows this; Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 9 (1st Cir. 2007); and, thus, sought to avoid approval of any sort of double taxation or appearance thereof.

³     "For obvious reasons, the states, local governments, and protected private actors all argue for broad interpretations of the [state action immunity] doctrine. Unfortunately, in too many situations, the state and local laws are being used not to protect genuine public goods like health and safety, but to protect politically-favored local businesses." Maureen K. Ohlhausen, Comm'r, Fed. Trade Comm'n, When Regulation Protects Privilege Instead of People: Government Restraints of Trade--A Competition Enforcer's Perspective 9 (June 27, 2015), https://www.ftc.gov/system/files/documents/public_statements/676881/150627oxfordspeech.pdf.

⁴     The Town relies on the doctrinal application of the 1980s and 1990s; Appellees' Br., pp. 17-19. Subsequent opinions of the Supreme Court, however, may "clarify" those prior; see U.S. v. Rahimi, No. 21-11001, at 2, 2 n.1 (5th Cir.

7

straw for it to grasp within Omni, which involved zoning regulations, because "'[t]he very purpose of zoning regulation is to displace unfettered business freedom in a manner that regularly has the effect of preventing normal acts of competition' and [] a zoning ordinance regulating the size, location, and spacing of billboards 'necessarily protects existing billboards against some competition from newcomers.'" Phoebe Putney, 568 U.S. at 230, quoting Omni, 499 U.S. at 373. "Other cases in which we have found a 'clear articulation' of the State's intent to displace competition without an explicit statement have also involved authorizations to act or regulate in ways that were inherently anticompetitive." Phoebe Putney, 568 U.S. at 230. The special law here does *not* authorize inherently anticompetitive conduct, much less the egregious type engaged in by the Town, and thus the Town is not immune from "the fundamental national values of free enterprise and economic competition that are embodied in the federal antitrust

---

Sept. 12, 2024); as has Phoebe Putney; 568 U.S. at 228 ("'[w]hen a state grants power to an inferior entity, it presumably grants the power to do the thing contemplated, but not to do so anticompetitively'"), at 235 ("even the authorization of discrete forms of anticompetitive conduct pursuant to a regulatory structure, does not establish that the State has affirmatively contemplated other forms of anticompetitive conduct that are only tangentially related"); and Dental Examiners, 574 U.S. at 504-505 (reiterating that "state-action immunity is disfavored[,]" "[a]n entity may not invoke Parker immunity unless the actions in question are an exercise of the State's sovereign power[,]" and "Parker's rationale [is] to ensure the States accept political accountability for anticompetitive conduct they permit and control.") Regardless, even the Town's cases pre-dating Phoebe Putney and Dental Examiners make clear that the Town is *not* entitled to *state* action immunity here. See infra; Appellants' Br., pp. 28-29.

8

laws." Dental Examiners, 574 U.S. at 504. Cf. Corey v. Look, 641 F.2d 32, 37 n.8 (1981).

The special law's exemption from the licensing fee for those who have already paid an excise tax is *not* inherently anticompetitive, but assuming *arguendo* that it is, it does *not* mean that the legislature gave *carte blanche* to the Town. "[E]ven the authorization of discrete forms of anticompetitive conduct pursuant to a regulatory structure, does not establish that the State has affirmatively contemplated other forms of anticompetitive conduct that are only tangentially related." Phoebe Putney, 568 U.S. at 235. What matters for the purposes of state action immunity is whether the anticompetitive conduct and effects alleged *here*, rather, "logically [] result" from the special law; Phoebe Putney, 568 U.S. at 229-230, citing Town of Hallie v. City of Eau Claire, 471 U.S. at 42; and they certainly don't. How the Town gets from not charging a fee if an excise tax has been paid on a car to capping supply and excluding competition is perplexing. The Town's bald citations to Rectrix Aerodrome Centers, Inc. v. Barnstable Mun. Airport Comm'n, 610 F.3d 8 (1st Cir. 2010) and Interface Group, Inc. v. Massachusetts Port Auth., 816 F.2d 9 (1st Cir. 1987); Appellees' Br., pp. 17-20; are untethered to reality. Compare Appellants' Br., p. 29.

This Court should "not infer [] a policy to displace competition from naked grants of authority. [Such] are the enabling statutes by which myriad instruments

9

of local government across the country gain basic corporate powers. To infer a policy to displace competition from, for example, authority to enter into joint ventures or other business forms would stand federalism on its head. A state would henceforth be required to disclaim affirmatively antitrust immunity, at the peril of creating an instrument of local government with power the state did not intend to grant. The immediate practical effect would be the extension of the Parker[5] principle downward, contrary to the teaching that *local instruments of government are subject to the Sherman Act*." Surgical Care Ctr. of Hammond, L.C. v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par., 171 F.3d 231, 236 (5th Cir. 1999) (emphasis added); See also IA P. Areeda & H. Hovenkamp, Antitrust Law ¶ 225, pp. 164-165 (5th ed. 2023) (quoting Surgical Care as "important" and opining: "Undoubtedly, many decisions inferring a broad immunity from general corporate powers are driven by the belief that no antitrust violation has occurred. But in that case the proper solution is dismissal on the antitrust merits, not finding authorization to engage in competitive [*sic*] acts from the grant of general corporate powers.")

The Town argues that there is no difference between a special law and a general law for the purposes of state policy and, thus, state action immunity.

---

[5] After Parker v. Brown, 317 U.S. 341 (1943), the originating case for state action immunity.

Appellees' Br., pp. 20-21. Aside from the obvious, *i.e.*, that a one-off exception for an individual town is just that – an *exception* – and *not* State policy; Appellants' Br., pp. 29-31; there is also a practical one: A Boolean search in the Session Laws Library of HeinOnline[6] indicates that there are at least 6,000 special laws in Massachusetts authorizing towns to do something or other. Not even "Pandora's Box" is sufficient an analogy to encapsulate the mess that would result from case law indicating that these towns may now turn around and do whatever they were specially authorized to do *anticompetitively*.

**3. Insulating five local companies from competition harms Plaintiffs and out-of-state businesses alike. Thus, Plaintiffs have standing to pursue their claim under the Dormant Commerce Clause Doctrine.**

The Town's contention that Plaintiffs-Appellants do not have standing under the Dormant Commerce Clause Doctrine (DCCD) because they are residents of the Commonwealth; Appellees' Br., pp. 23-24; *is incorrect*. See Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 183 (1st Cir. 1999) ("In Commerce Clause jurisprudence, cognizable injury is not restricted to those members of the affected class against whom states or their political subdivisions ultimately discriminate. . . . Thus, an in-state business which meets constitutional and

---

[6] Such Boolean search was accomplished by searching within the Massachusetts Session Laws Library of HeinOnline for "an act" within ten words of "authorizing" within ten words of "town."

prudential requirements due to the direct or indirect effects of a law purported to violate the dormant Commerce Clause has standing to challenge that law.")

The Town's reliance on Wine & Spirits Retailers, Inc. v. Rhode Island, 481 F.3d 1 (1st Cir. 2007); Appellees' Br., pp. 23-24; is misplaced.[7] The plaintiffs there lacked standing because "[they] ha[d] failed to show any cognizable harm, direct or indirect, attributable to the residency requirement of [the challenged statute]." Id. at 12. Markedly in contrast to the situation here, the plaintiffs in Wine & Spirits already had a license or had no interest in obtaining one. See id. at 11. It was *not* the discriminatory residency requirement that harmed Plaintiffs in Wine & Spirits, but the statute's "ban on franchise and chain-store arrangements." Id. at 12. "This deficiency distinguishes the plaintiffs' case [in Wine & Spirits] from cases like Houlton in which claimants have succeeded in making out the rudiments of standing." Id. at 12. The "rudiments of standing," although sufficient, were *not* made in Wine & Spirits. They *are*, on the other hand, made *here*: Chapter 58 protects in-state businesses by inhibiting new entrants to the market, Plaintiffs included. The protectionist aspect of the bylaw harms Plaintiffs and out-of-state businesses alike. Thus, Plaintiffs have standing. See also

---

[7] Plaintiffs-Appellants already addressed below Defendants-Appellees' incorrect reading of Wine & Spirits Retailers, Inc. v. Rhode Island. See ECF Doc. No. 22, p. 8.

12

Appellees' Br., p. 23 (standing is met by actual or imminent injury traceable to challenged action and likelihood that favorable decision will redress such injury).

4. **The Town has *no* process for a *new* applicant to obtain a license or medallion, purposefully and effectively insulates five locals from competition, and massages evidence in its brief to contend otherwise.**

First, the Town's straw man argument that "Chapter 58, *on its face*, does not discriminate" under the DCCD; Appellees' Br., p. 25 (emphasis added); says it all. The Town writes that its bylaw does not discriminate "on its face" because it does *in practice*.[8] Notwithstanding the *theoretical* transferability of medallions under the text of bylaw; Appellees' Br., p. 25; the Town's *actual* practices make this an impossibility. The Town has *no* process for a new applicant to obtain a license or a medallion, which has resulted in the same "Original Operators" having been insulated from competition *at least* since the Town's licensing administrator started *nine years ago.* Appellants' Br. pp. 13-14. Hertz, the largest medallion hoarder, or holder, drives up the price of car rentals on island by keeping from circulation but not actually using 100+ medallions each year; Appellants' Br., p.

---

[8] The challenge here is not merely facial, but also *as applied*. ECF Doc. No. 1, ¶¶ 1-4, 28-30, 32, 41-50, 57; ECF Doc. No. 9 (motion for preliminary injunction is as to the *enforcement* of c. 58); ECF Doc. No. 10, p. 1 ("Defendants Town of Nantucket and Nantucket Town Select Board (Defendants) – by way of a 1997 amendment to Town Bylaw Chapter 58 *and enforcement thereof* – limit car rentals on island to 700 and licenses to five local companies and Hertz, the 'Original Operators.'" (Emphasis added.))

13

14; Appx. 21-22, 197-214; a practice the Town not only allows, but engages in itself. Notwithstanding overwhelming interest, including from Plaintiffs-Appellants themselves, the Town refuses to reissue 8 unused medallions. Appellants' Br., p. 14.

Second, the Town proffers as evidence that the Original Operators do not control the market a 2003 letter from Vito Capizzo of Whaler Auto Rental, Inc., requesting that the Select Board transfer its ninety-three (93) medallions to O'Hara Motors, Inc. Appellees' Br., p.5 (citing Appx. 337). The Town represents that "*[n]either* Whalers Auto Rental *nor* O'Hara Motors Inc. *are listed* in Plaintiffs-Appellants' list of 'Original Operators[.]'" Appellees' Br., p. 5. Once again, the Town's language is a tell. While O'Hara Motors, Inc. is not "listed" as an Original Operator, it is owned by John P. O'Hara,[9] who is principal owner of Nantucket-Rent-A-Car, which *is* one of the Original Operators, and holds those same 93 medallions to this day. Appx. 320-26, 338.

---

[9] This Court can take judicial notice of public records; cf. Fed. R. Evid. 201; Freeman v. Town of Hudson, 714 F. 3d 29, 36-37 (1st Cir. 2013); like that of John P. O'Hara listed as owner of O'Hara Motors, Inc. with the Secretary of State of the Commonwealth of Massachusetts. Available at https://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSummary.aspx?sysvalue=qJb0zxgsazFK.a08qpeaMfqX3L6QekMYtuGTeqvWzVo-.

Likewise, this Court can take judicial notice that Whaler Auto Rental, Inc., was a Nantucket-based company before its involuntary dissolution in 2007. https://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSummary.aspx?sysvalue=JhcDjU6k7CfJERnlxMSrnckK_xTol6RyhkiFEXWlSWk-.

It is hard to understand why the Town will go to such efforts to keep Plaintiffs-Appellants out of business unless one grasps the "local's only" culture of Nantucket.[10] In his letter urging the Town to close Plaintiffs-Appellants' business, Mr. O'Hara – through counsel – emphasized his "strong ties to the Island. His wife was born and raised there; they own a home in Nantucket, and their now grown children were born on the Island and spent much of their childhood there. (They are fourth generation Islanders)." Appx. 321. Tribalism is a primordial instinct. The legal doctrine that state and local governments cannot favor their own in commerce may seem *unnatural* – but that is precisely why it is necessary for a successful union.

**5.   The bylaw prescribes an application process, but the Town provides *none*, epitomizing denial of due process.**

Section 58-3(A) of the Town's bylaw provides for a process to apply for a license to operate a car rental business on Nantucket. Appx. 9. The Town, however, has *no* process – none, zilch, nada. Appellants' Br. pp. 13-14. Thus, process is due under the bylaw that is *not actually* provided. It is not that the Town exercised its discretion to deny Plaintiffs-Appellants a license; Appellees' Br., pp. 27-31; the Town simply does *not* have an application process. If a bylaw provides

---

[10]   A town official has, within the context of this bylaw, referred to Mr. Broad, a Black first-generation American, and his wife and business, as "illegals." Appx 88-89, 97, 103.

15

for a process, some sort of process is due.  Cf. Beitzell v. Jeffrey, 643 F.2d 870, 874 (1st Cir. 1981).  The value of such process alone is inherently unquantifiable – harm resulting from its denial is, therefore, irreparable.  Thus, a preliminary injunction is in order on this alone.

**6.     Plaintiffs-Appellants' irreparable harm is caused by the Town's illegal bylaw.**

The Town argues that the irreparable harm Plaintiffs-Appellants would suffer absent a preliminary injunction should not count because they operated their business in violation of the Town's bylaw.  The case law cited by the Town does *not* support this proposition.  A plaintiff's self-inflicted irreparable harm is that caused independent of the alleged illegal action of the defendants, like that resulting from a plaintiff who waits too long to bring a lawsuit, defaults on a loan, or fails to secure a *"*readily available license." Appellees' Br., pp. 34-36.  Nothing like that occurred here.  The irreparable harm here would not exist *but for* the Town's illegal bylaw.  The Town's case law is inapposite in this respect.  See, e.g., Second City Music, Inc. v. City of Chicago, 333 F.3d 846, 850 (7th Cir. 2003) ("If the license can be had, then the lack of an injunction does not lead to irreparable harm.  Injury caused by failure to secure a readily available license is self-inflicted, and self-inflicted wounds are not irreparable injury.  Only the injury inflicted by one's adversary counts for this purpose.")  Further, the harm here is caused by the

Town's selective enforcement of their bylaw against Plaintiffs-Appellants but not Town employees. The Town's hands are anything but clean here.

**7. The government's closure of this family's business interferes with the most sacred of associations protected by the Due Process Clause and the First Amendment – that of the family – such that irreparable harm is presumed.**

What is the value of a *family* business? For Mr. Broad and Ms. McCrensky and their young children – it is nothing short of their very existence together. Appellants' Br., pp. 15-16; Appx 97, 98, 103, 104, 189-191. Mr. Broad says it best when he explains why he and Ms. McCrensky opened Becky's Broncos after years working on the road. Appx 189-91. Here is but an excerpt.

> *The physical and mental challenges of being separated as a family led us to close our Vail and Martha's Vineyard stores so we could be together as a family on Nantucket and begin to get my health and my wife's health back on track. We launched Becky's Broncos LLC, a small car rental company renting Ford Broncos on the island, in 2023 as a way for our family to stay on the island together. Last summer, my 3 year old son Lewis regularly helped me wash the Broncos in the early morning hours to prepare the trucks for delivery to customers. Waking up early to help me with the trucks became part of his routine, time together that he could see we were working hard and building something as a family. Allowing our business to be shut down by an unjust and frankly un-American law would teach my son that we are powerless as individuals against injustice and that the American dream is simply a fabricated ideal. As a first generation American, my parents came to the United States because of their belief in the American dream and they instilled this belief in me. I will not give up on the American dream for my son or my daughter.*

17

Appx 191.  A money award cannot *fix* this.  Cf. <u>Semmes Motors, Inc. v. Ford Motor Company</u>, 429 F. 2d 1197, 1205 (2nd Cir. 1970) ("[T]he [plaintiff's family] want[s] to [work together], not to live on the income from a damages award." . . . Moreover, they want to continue living.")

Family is a fundamental right protected throughout the Constitution.  Cf. <u>Board of Directors of Rotary Int'l v. Rotary Club of Duarte</u>, 481 U.S. 537, 545-546 (1987).  It is sourced in both the Due Process Clause of the Fourteenth Amendment; <u>see</u> <u>Moore v. East Cleveland</u>, 431 U.S. 494, 499 (1977); and the freedom of association of the First; <u>cf.</u> <u>Board of Directors of Rotary Int'l v. Rotary Club of Duarte</u>, 481 U.S. at 545-546.  And "[i]n the First Amendment context, the likelihood of success on the merits is the linchpin of the preliminary injunction analysis.  As the Supreme Court has explained, '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.' . . . Accordingly, irreparable injury is presumed upon a determination that the movants are likely to prevail on their First Amendment claim.  It [is] therefore incumbent upon the . . . court to engage with the merits before moving on to the remaining prongs of its analysis." <u>Sindicato Puertorriqueño v. Fortuño</u>, 699 F. 3d 1, 11 (1st Cir. 2012).  The overwhelming evidence is that the Town's shuttering of this family business will interfere with this fundamental right.  *There is no way to fix this with money*.  Wherefore, the relief requested in this appeal; Appellants' Br.,

18

p. 36; is just and legally correct. For while it may be considered a drastic remedy, the essence of a preliminary injunction is equity.

                                Respectfully submitted,
                                Plaintiffs-Appellants,
                                By their attorney,

Dated: <u>September 28, 2024</u>        <u>*/s/ Lucas Newbill*</u>
                                Lucas Newbill
                                1st Cir. Bar # 1192218
                                Law Offices of Lucas Newbill
                                P.O. Box 1741
                                Brookline, Massachusetts 02446
                                Tel. 617-918-7567
                                lucas@lucasnewbill.com

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,495 words.

I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font.

*/s/ Lucas Newbill*
Lucas Newbill

Dated: September 28, 2024

# CERTIFICATE OF SERVICE

I hereby certify that this brief and addendum was filed this day through the court's electronic-filing system (CM/ECF) and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF). I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Lucas Newbill*
Lucas Newbill

Dated: September 28, 2024